## AT CHAMBERS.

## IN THE MATTER OF MARION LANDAIS.

The privileges and immunities of Foreign Representatives and their attachés, examined at length.

An attaché of the French Legation having assaulted his superior, the latter applied to the Minister of Foreign Relations for assistance, by the imprisonment of the offender until arrangements could be made for sending him to France; whereupon he was arrested by the Marshal under an executive order. The court, on *habeas corpus*, refused to discharge him from custody.

The following is the decision of JUDGE ROBERTSON:

The return made by the Marshal to the writ of *habeas corpus*, states that Monsieur Landais has been arrested and is now detained by virtue of an executive order, from His Majesty's Minister of Foreign Relations, issued at the instance and on the responsibility of Monsieur Louis Emile Perrin, Consul, Commissioner and Plenipotentiary of France, in this Kingdom, who has applied, officially, to the Minister of Foreign Relations for the assistance of this government, in the preventive and provisional detention, in prison, of M. Landais, his Chancellor and subordinate officer, whom he accuses of having assaulted him in the street with a sword-cane, in danger to his life, in violation of the laws of France and of his personal inviolability as a public Minister, and whom he is desirous of sending thither by a vessel soon to sail, that he may be dealt with according to the pleasure of the French government.

The present is the first case of the kind that has ever come before our courts, and involves several distinct questions alike embarrassing by reason of their novelty, as they are important. Those questions have severally been dwelt upon at considerable length in the course of the argument, particularly by the counsel for the petitioner. I shall endeavor to confine myself to the consideration of only so many of the points that have been raised as may be necessary to a decision of the motion made by petitioner's counsel, viz: That he be discharged from custody on the ground that he is not detained by any lawful authority.

First, then, is Monsieur Perrin to be regarded by this court as a Minister, or Diplomatic Representative of France, and therefore entitled to the rights, privileges and immunities which appertain to that exalted station, by international laws, and by the statute law of this kingdom ?

In proof of Monsieur Perrin's claim to be so considered, the District Attorney presents the original commission, or letter of credence of M. Perrin, signed by the Prince President and impressed with the Seal of State of the late Republic of France. He also presents a duly authenticated copy of the proclamation issued by His late Majesty, Kamehameha 3d, on the 28th day of January, 1853, announcing the fact that the Prince President of France had accredited M. Perrin to His Majesty, in the character of Consul, Commissioner and Plenipotentiary; and requiring all his subjects and all departments of his government to pay high consideration to the person, property and retainers of Monsieur Perrin, and to give full faith and attach full

credit to all his official acts, as such Consul, Commissioner and Plenipotentiary.

The evidence on this point is perfectly conclusive. We are bound to all intents and purposes, by the proclamation of His Majesty the King, whose sole prerogative it is, by the Constitution, to receive and acknowledge ambassadors and other public Ministers. (See article 31, of the Constitution.) His Majesty must be conclusively presumed to have received Monsieur Perrin, in the quality attributed to him in his credentials. That is a matter of state with which this court has nothing to do. If the petitioner's counsel had offered to produce evidence to contradict His Majesty's proclamation, and prove that Monsieur Perrin's commission from the French government was only that of a Vice Consul, I could not have received it.

I will now proceed to inquire, with reference to the case now before me, what are some of the rights, privileges and immunities which may be claimed by Monsieur Perrin, in consequence of his official standing near the Hawaiian court.

It is enacted at section, 10, page 116, vol. 1st, of the Hawaiian Statute Laws, that it shall not be lawful to molest the person of any minister accredited to the King or to the Minister of Foreign Relations, and who has been duly made known to the public, in the manner in which Monsieur Perrin was announced; nor to arrest or detain the person of any individual attached to the legation of such minister. Section 12 prescribes, particularly, the exemption of such minister, together with all the retainers of his household and his attachés, made known as such, from arrest and imprisonment; and his property from attachment and levy on civil process.

These statutory provisions of our laws are merely declaratory of a part of the Law of Nations, affecting public ministers, as will be seen by reference to the authorities.

Vattel, (Chitty's edition) at page 464, sec. 81, says, " The necessity of embassies being established, the perfect security and inviolability of embassadors, and other ministers, is a certain consequence of it; for, if their person be not protected from violence of every kind, the right of embassy becomes precarious, and the success very uncertain. A right to the end inseparably involves a right to the necessary means."

To the same effect is the following passage from Wheaton on International Law, page 271: " From the moment a public minister enters the territory of the state to which he is sent, during the time of his residence, and until he leaves the country, he is entitled to an entire exemption from the local jurisdiction, both civil and criminal. Representing the rights, interests and dignity of the sovereign or state by whom he is delegated, his person is sacred and inviolable. To give a more lively idea of this complete exemption from the local jurisdiction, the fiction of extra-territoriality has been invented, by which the minister, though actually in a foreign country, is supposed still to remain within the territory of his own sovereign." Again, " The act of sending the minister on the one hand, and of receiving him on the other, amounts to a tacit compact between the two states that he shall be subject only to the authority of his own nation." (See also Elliott's Dip. Code, vol. 2, pp. 403 and 404, and Vattel, p. 469, sec. 92.)

In respect to the retinue of a public minister, Mr. Wheaton says, " This immunity (from local jurisdiction) extends, not only to the person of the minister, but to his family and suite, secretaries of legation and other secretaries, his servants, moveable effects, and the house in which he resides "

Further on, he says, " It follows from the principle of the extra-territoriality of the minister, his family, and other persons attached to the legation or belonging to his suite, and their exemption from the local laws and jurisdiction of the country where they reside, that the civil and criminal jurisdiction over these persons rests with the minister, to be exercised according to the laws and usages of his own country. In respect to civil jurisdiction, both contentious and voluntary, this rule is, with some exceptions, followed in the practice of nations. But in respect to criminal offences committed by his domestics, although in strictness the minister has a right to try and punish them, the modern usage merely authorizes him to arrest and send them for trial to their own country." (Wheaton's Int. Law, pp. 272 to 274.)

On this subject, M. Vattel says: " The persons in an ambassador's retinue partake of his inviolability; his independency extends to every individual of his household; so intimate a connection exists between him and all those persons, that they share the same fate with him; they immediately depend on him alone, and are exempt from the jurisdiction of the country."

" If the domestics and household of a foreign minister were not solely dependant upon him, it is evident at first sight, how easily he might be harrassed, molested and disturbed in the exercise of his functions. These maxims are at present everywhere adopted and confirmed by custom."

" The persons in a foreign minister's retinue being independent of the jurisdiction of the country, cannot be taken into custody or punished without his consent."

" The ambassador must necessarily be supposed to possess whatever degree of authority is requisite for keeping them in order."

" In general, however, it is to be presumed that the ambassador is possessed only of a coercive power sufficient to restrain his dependents by punishments which are not of a capital or infamous nature. He may punish the faults committed against himself and against his master's service, or send the delinquents to their sovereign, in order to their being punished. (Vattel, pp. 497, 498 and 499; see also Elliott's Dip. Code, vol. 2, p. 408, sec 79.) In Polson and Horne's Law of Nations and Diplomacy, at page 101, it is said, " As ministers of the first and second class enjoy immunity from jurisdiction for the persons composing their suite, it remains for the two Courts to determine how far the minister may himself exercise such jurisdiction, or refer the parties arraigned to the competent authorities of his own sovereign's dominions."

But, say the counsel for petitioner, admitting, for the sake of argument, that Monsieur Perrin does enjoy the rank and privileges of a public minister, we claim that M. Landais is not an attaché of his legation, nor his subordinate, nor a member of his household, and that therefore M. Landais is not under the authority and control of Monsieur Perrin. His counsel even contended that Landais occupies

z

here the position of a private French subject, under the protection of the laws of this kingdom, although they subsequently presented to the court a commission or letter of instructions, to M. Landais from the Minister of Foreign Affairs in France, addressing M. Landais in his capacity of " Chancelier de premiere classe," and transferring him from Guyaquil to the Consulate at Honolulu.

Here, then, is a seeming contradiction between the statement of Monsieur Perrin, in his official requisition addressed to the Minister of Foreign Relations on the 1st instant, in which he styles M. Landais the Chancellor of his Legation, or Mission, and the affidavit of M. Landais, who states that he is the Chancellor, merely, of the Consulate, thus drawing a line of separation between the Consulate and the Diplomatic Legation.

It has not been suggested how, or by what rule, this court can proceed to adjudicate (if it can do so at all) upon this dispute between Monsieur Perrin and Monsieur Landais, as to their relative official rank and relations; or how I am to draw the line of demarcation between the rank, duties and privileges of the Consul and those of the Commissioner and Plenipotentiary, all being in this instance united in one and the same individual.

What was originally merely the French Consulate, at Honolulu, has been elevated to the standing of a Diplomatic Legation, through the investment of its chief, by his government, with the attributes and functions of a public minister; in the same way that what was formerly a British Consulate, has been erected into a Consulate General.

It would seem, from a quotation I have already made from M. Vattel, that the connection between a public minister and his retinue and subordinates is so intimate, and their dependence upon him so complete, that they all share his fate. They share his elevation or depression. If M. Perrin should be lowered to the rank of a Consul, his retainers would immediately lose their immunity from the local jurisdiction, and so *vice versa.*

The difficulty of drawing a distinction in this instance between the Consulate and the Legation, will be apparent if we suppose, for example, that an assault had been committed upon Monsieur Perrin, in the street, by a subject of this Government. Could such party, so assaulting M. Perrin, justify or mitigate the offence by saying that he assaulted only the French Consul, who is not a privileged person, but not the French Diplomatic Representative, whose person is declared to be inviolable ? Or, supposing that a case should arise involving the extra-territoriality of Monsieur Perrin's residence. Could the party violating his immunity in this respect, defend himself by the plea that he only trespassed on the residence of the Consul, and not on the residence of the minister?

It appears to me that so far as the courts of this kingdom are concerned, we must be guided by the Executive Proclamation of our Government, which announces Monsieur Perrin to us as having been received here in the capacity of a public minister, whom we are to regard as being entitled to all the rights and privileges that appertain to that position; all whose official acts are to receive full faith and credit, and all whose subordinates and retainers, recognized as such by the Department of Foreign Relations, are to be regarded as being without the local jurisdiction.

That M. Landais is an officer of the French Consulate, or Legation, (and I know no Consulate apart from the Legation,) is quite clear from the commission, or letter of instructions which he presents, from the French Minister of Foreign Affairs; and that he is subordinate to and under the control of Monsieur Perrin, is equally clear from the letter submitted as evidence on behalf of Landais, dated October 30th, 1855, by which he was provisionally suspended from the exercise of his official functions, by his superior officer, Monsieur Perrin. The impropriety, therefore, of my attempting to adjudicate and decide upon their dispute, becomes very apparent. Would any decision of this matter by me be binding upon the parties ? I think not. Certainly it could not be binding upon Monsieur Perrin, for he distinctly claims his acknowledged and indisputable immunity from the local jurisdiction, in regard to this whole matter. He claims this immunity not only as to himself, but as to M. Landais also, and his claim has been admitted and acted upon by the Executive.

The state of affairs between Monsieur Perrin and Monsieur Landais was aptly illustrated by the learned District Attorney, when he compared it to the temporary arrest and suspension of an officer in the navy by his commander; operating upon the officer as a complete deprivation of authority and function, without lessening in any degree the authority and control of his commander over him.

But the District Attorney argues, and I think with much force, that the question of M. Landais' relation to the Representative of France has already been adjudicated upon and decided by the Executive branch of this Government, which has authority to do so, before issuing the order to the Marshal for the arrest of M. Landais, and that this court cannot review the decision of the Executive in this matter.

If it had been made to appear in the course of these proceedings, that M. Landais is not in any way attached to the French Consulate or Legation, nor a subordinate or retainer of Monsieur Perrin in any capacity whatever, and that he had never been recognized as such at the Department of Foreign Relations, it might then be difficult to say —and I venture no opinion on the point—whether or not this court could take upon itself to discharge M. Landais from his confinement. But the facts in the case are otherwise. It is undeniable that M. Landais is the subordinate officer of Monsieur Perrin, whom I am bound to know and recognize as a public minister. As to the precise amount of authority which Monsieur Perrin may claim over Monsieur Landais, and the exact official relation of the latter to the former according to the rules governing the French civil service, I cannot decide. When they dispute as to these matters, their imperial master must settle it, and if Monsieur Perrin has wronged Monsieur Landais, he must seek his redress in the courts of their common country.

That M. Landais is recognized by the Executive as occupying such a position of subordination to Monsieur Perrin as entitles him to exercise the constraint imposed upon Landais, is evident upon the face of the order addressed to the Marshal, by the Minister of Foreign Relations, in which he says, " The exercise of Monsieur Perrin's exclusive diplomatic jurisdiction in this matter, over his own officer, supposed to be extra-territorial, exempts the King's Government alike

from all jurisdiction and responsibility—to grant to him the assistance he requires is a comity to the Emperor whom he represents."

That this court cannot sit in judgment upon the decision of the Executive, in reference to the public character of a foreign minister, or of any attaché of a foreign minister, and pronounce either the one or the other unduly appointed or improperly recognized, and thereby take from him either the privileges or the disabilities of his station, I think is quite clear. (See Elliott's Dip. Code, vol. 2, p. 418, secs. 112 and 113.)

The present case bears a strong analogy to that of a commitment for contempt by a court of justice. The rule is too well established, I think, to admit of its being shaken, that upon an application to be discharged under a writ of *habeas corpus*, by a court of superior jurisdiction, if it appears on the face of the application that the commitment has been made by a court of competent jurisdiction, the writ will be refused. And if a writ of *habeas corpus* is issued in such case, the court before whom it is returned will not discharge the party even if, in fact, the court which made the commitment, committed an error in deciding that he was guilty of a contempt. If the rights of the party have thus been violated by the court committing him, yet its decision cannot be reversed by any other tribunal.

While I consider it my duty carefully to guard and maintain every iota of the extensive powers vested in this court by the Constitution and Laws of this kingdom, I also consider it my duty to abstain from any interference with the limited jurisdiction which every foreign minister may rightfully claim to exercise over his own subordinates and retainers under the law of Nations.

The counsel for petitioner contend that this court ought to review and judge of the action of the Executive, in extending its aid to the Representative of France, in accordance with the comity which prevails between civilized nations.

I do not think so. It seems to me that the Executive having seen fit to extend this comity to the French government, through Monsieur Perrin, in a case where its action affects only the rights of parties subject to the law of nations or to the laws of France, and does not infringe on the rights of any one who can claim the protection of the laws of this kingdom, then this court has no ground for interference.

Petitioner's counsel argued further, that the Minister of Foreign Relations could not interfere directly in this matter, and that Monsieur Perrin ought to have applied to the judiciary. They cited in support of this position a passage from the opinion of Mr. Toucey, Attorney General of the United States, (see opinions of the Attorney General, vol. 5, p. 70,) in reference to a representation made by the French Minister, at Washington, that the effects of one of his attachés had been detained by a hotel keeper, with whom he lived.

It appears to me that there is a wide distinction between such a case as that and the one now under consideration. Had this been the case of an attachment, for instance, of Monsieur Landais, or of his goods, under a judicial process, and a representation had been made by Monsieur Perrin to the Minister of Foreign Relations, he would, no doubt, have referred the French Representative to the judicial courts; for the Minister could not have taken upon himself to order the release of M. Landais, or his property, from attachment

under legal process.   If he had done so, it would have presented an instance of the Executive attempting to over-rule the action of the judiciary, and no one would have been under any obligation to pay the least attention to his order.

I have adverted to all the points presented by the case upon which I think it is necessary to touch, for the purpose of showing the grounds of my decision.

The motion that Monsieur Landais be discharged is refused.

Mr. Harris and Mr. Marsh, for petitioner.

Mr. Bates, for the government.